UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\-------------------------------------------------------x

|  |  |
|---|---|
| GERARDO PERDOMO, | |
| Plaintiff, | No. 19 Civ. 3378 |
| -against- | |
| THE UNITED STATES OF AMERICA, | **COMPLAINT** |
| Defendant. | JURY TRIAL DEMANDED |

\-------------------------------------------------------x

Plaintiff Gerardo Perdomo, by and through his attorneys, Gibson, Dunn & Crutcher LLP, alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.        Mr. Perdomo is an elderly gentleman, residing in Bronx, New York.  Mr. Perdomo was born in Cali Colombia in February 1958, and he has been a legal permanent resident of the United States since he was fourteen years old.  Throughout 2017, while detained at the Hudson County Correctional Facility in Kearny, New Jersey as part of removal proceedings instituted against him, Mr. Perdomo was transported several times to the Varick Street Immigration Court, located at 201 Varick Street, New York ("Varick Street") for court appearances and related meetings.[1]  It was during one such trip, on the morning of June 20, 2017, that officers from Immigrations and Customs Enforcement ("ICE") attacked Mr. Perdomo during a routine security

---

[1]  Mr. Perdomo was subsequently released from detention, and his removal case was transferred from Varick Street to the immigration court at 26 Federal Plaza in New York, New York.  Mr. Perdomo's removal proceedings remain pending.

screening at Varick Street.  The physical force used was unlawfully excessive, unreasonable, and without justification.  To remedy this unlawful and unjustified attack, Mr. Perdomo brings this action under the Federal Torts Claims Act, 28 U.S.C. § 2674, seeking relief for the injuries he sustained when ICE officials used unconstitutionally excessive force against him, which other ICE officials ignored and permitted to occur.  Mr. Perdomo seeks compensatory and punitive damages, attorneys' fees, and any such other and further relief as the Court deems just and proper.

## PARTIES

2.          Plaintiff GERARDO PERDOMO ("Mr. Perdomo" or "Plaintiff") is a native and citizen of Colombia and a legal permanent resident of the United States of America, currently residing in Bronx, New York.

3.          Defendant UNITED STATES OF AMERICA ("USA") is the appropriate defendant under the Federal Tort Claims Act, 28 U.S.C. § 2674.

4.          Mr. Perdomo is informed and believes, on the basis of the facts alleged herein, along with facts and information that are expected to be revealed in discovery, that the Defendant and its officers, employees, and agents are directly and/or indirectly responsible for the physical and non-physical injuries that Mr. Perdomo suffered because of the attack on him at Varick Street.

5.          Mr. Perdomo is informed and believes that, on the basis of the facts alleged herein, the individuals who physically attacked Mr. Perdomo are federal investigative or law enforcement officers empowered to execute searches, to seize evidence, or make arrests for violation of federal law.

## JURISDICTION AND VENUE

6.          This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1346(b), because this action arises under 28 U.S.C. § 2674.

7.          Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(e) because the torts and actions alleged herein occurred at Varick Street, which is located in the Southern District of New York.

8.          In accordance with 28 U.S.C. § 2675, on April 2, 2018, Mr. Perdomo, through counsel, presented his claims to, *inter alia*, U.S. Immigration and Customs Enforcement, the Office of General Counsel for the U.S. Department of Homeland Security, and the Office of Chief Counsel at Varick Street.  On October 25, 2018, U.S. Immigrations and Customs Enforcement delivered written notice that it was denying Mr. Perdomo's claims.  None of the other agencies that Mr. Perdomo submitted his claims to have responded.  Accordingly, Mr. Perdomo has exhausted his administrative remedies.

## STATEMENT OF FACTS

9.          In or around November, 2016, Mr. Perdomo was detained by ICE officials and placed in detention at the Hudson County Correctional Facility ("Hudson"), pending removal proceedings at Varick Street.  While in detention, Mr. Perdomo would be transported from Hudson to Varick Street to attend court hearings, meet with his lawyer, and attend other meetings related to his removal proceedings.

10.         On June 20, 2017, Mr. Perdomo was scheduled to be transported in custody to Varick Street to meet with a psychologist who was to conduct an evaluation related to the removal proceedings.

11.        Early in the morning on June 20, 2017, Mr. Perdomo was shackled at Hudson and transported with approximately 10–12 other detainees to Varick Street.  They arrived around 6:30 a.m.

12.        Mr. Perdomo and the other detainees were transported by elevator at Varick Street and brought to a corridor on the fourth floor for a routine security screening.

13.        Mr. Perdomo and the other detainees were ordered to face a wall and place their hands up against the wall.  Mr. Perdomo complied.

14.        Unknown Officer #1, an ICE officer who is approximately six feet tall and appeared to weigh approximately 200-pounds, then removed Mr. Perdomo's shackles and proceeded to search Mr. Perdomo.

15.        As Mr. Perdomo stood with his hands against the wall, Unknown Officer #1 forcefully squeezed Mr. Perdomo's shoulder.  Mr. Perdomo winced but did not otherwise react.

16.        Unknown Officer #1 then pulled Mr. Perdomo's scapular—a religious pendant worn around the neck—so that it was taut against Mr. Perdomo's throat.  Mr. Perdomo was in pain but did not resist.  Unknown Officer #1 did not let go of the scapular until the ICE officer next to him told Unknown Officer #1, in words or substance, to "take it easy."

17.        Unknown Officer #1 let go of the scapular and then conducted an unusually aggressive and painful search of Mr. Perdomo.  Mr. Perdomo did not resist or fail to comply with any of Unknown Officer #1's orders or other ICE officials' orders.

18.        Unknown Officer #1 gripped Mr. Perdomo's arms so hard that he caused Mr. Perdomo to sustain bruising.

19.        Unknown Officer #1 patted down Mr. Perdomo's lower body.  During the pat-down, Unknown Officer #1 deliberately struck Mr. Perdomo, hitting him in the genitals and

4

causing Mr. Perdomo substantial pain.  Mr. Perdomo flinched in pain after being struck in the genitals, but did not resist the search.

20.        Unknown Officer #1 continued his unnecessarily aggressive and forceful search.

21.        Mr. Perdomo did not resist the search, complied with all orders given by Unknown Officer #1 and other ICE officials, and did not otherwise pose a threat or attempt to flee.

22.        At the conclusion of the search, Mr. Perdomo, while keeping his hands against the wall, turned his head to his side (where Unknown Officer #1 was standing) to ask Unknown Officer #1 why he had treated him so roughly.  Almost immediately, and without warning, Unknown Officer #1 punched Mr. Perdomo in the jaw.  Mr. Perdomo was caught off guard by the sudden attack.

23.        This attracted the attention of Unknown Officer #2, who, on information and belief, was Unknown Officer #1's supervisor.

24.        Unknown Officer #2 walked over and immediately claimed to everyone present that Mr. Perdomo had pushed Unknown Officer #1.

25.        Unknown Officer #2's claim that Mr. Perdomo had pushed Unknown Officer #1 was false.

26.        Unknown Officer #1 was then removed from contact with Mr. Perdomo.

27.        When Mr. Perdomo attempted to explain what had actually happened, Unknown Officer #2 threw him to the ground and dug his knee into Mr. Perdomo's spine and then into Mr. Perdomo's right knee.  Unknown Officer #2 then tightly handcuffed Mr. Perdomo.  Mr. Perdomo did not attempt to resist Unknown Officer #2's unprovoked attack.

28.        Additional unknown officers helped Unknown Officer #2 restrain Mr. Perdomo.

29.        After dragging Mr. Perdomo to his feet, Unknown Officer #2 took Mr. Perdomo towards a nearby cell and slammed Mr. Perdomo's head against a cell door.

30.        Unknown Officer #2 then ordered Mr. Perdomo to spread his legs.   When Mr. Perdomo informed Unknown Officer #2 that he could not do so because of how much pain he was in, Unknown Officer #2 kicked Mr. Perdomo's feet apart.

31.        Throughout the course of events, the other ICE officers present stayed in the vicinity of Mr. Perdomo, and did not attempt to stop the unprovoked, unwarranted attacks on Mr. Perdomo by Unknown Officer #1, Unknown Officer #2, and other unknown officers that helped restrain Mr. Perdomo, an elderly man.

32.        After the attacks, one of the ICE officers present (who had witnessed the attacks) intervened and attempted to defuse the situation.

33.        Next, Mr. Perdomo was tightly handcuffed and made to sit in a chair outside of a cell with his hands behind his back for approximately one hour.  During this time, Mr. Perdomo objected to his overly-tightened hand cuffs.  In response, Unknown Officer #2 ordered him to keep quiet and tightened the handcuffs further, causing pain to Mr. Perdomo.

34.        Mr. Perdomo was then taken to a holding cell and confined alone, separate from the other detainees.

35.        The ICE officer who witnessed the attacks and attempted to defuse the situation subsequently spoke to Mr. Perdomo.  That officer commented to Mr. Perdomo about the attack and informed him that the incident was likely recorded by security cameras in the corridor.

36.        Mr. Perdomo, through counsel, has attempted to obtain the security camera recording of the attack, including by requesting it from a DHS Official investigating the incident, but he has yet to receive it.

37.          Mr. Perdomo, through counsel, has also attempted to obtain the security camera recording of the attack by filing Freedom of Information Act ("FOIA") requests with the Department of Homeland Security ("DHS") on April 1, 2019; the Department of Justice Executive Office for Immigration Review ("EOIR") on March 20, 2019; the General Services Administration ("GSA") on March 20, 2019; Immigration and Customs Enforcement on March 20, 2019; and United States Customs and Immigration Services on March 20, 2019.

38.          Following an indication from Ms. Shelley M. O'Hara at EOIR that EOIR did not possess the requested video, Mr. Perdomo withdrew his FOIA request to the EOIR on April 1, 2019.

39.          The GSA denied Mr. Perdomo's FOIA request on April 1, 2019, indicating it also did not possess the requested video.

40.          Mr. Perdomo's remaining FOIA requests remain pending.

41.          As a result of the attack, Mr. Perdomo experienced severe pain in his jaw and neck, extending to his back and sides as well as swelling in his knee.

42.          In addition, as a result of Unknown Officer #1's unnecessarily forceful search, Mr. Perdomo also experienced significant pain in his testicles, in particular swelling in his left testicle.

43.          Mr. Perdomo also suffered significant emotional distress from the unprovoked attacks, including anxiety, worry, and trouble sleeping.

44.          Except for a brief moment when he was given Motrin, Mr. Perdomo was confined and left in pain for approximately 7 hours before he was permitted to see the psychologist at around 3:00 pm.

45.          He was taken from Varick Street back to Hudson at approximately 4:30 pm.

46.        Mr. Perdomo, a sixty-year old man with a history of medical issues, did not pose a threat to any of the ICE officers.  He did not resist or otherwise fail to comply with the ICE officers' orders and search protocols.  There was, therefore, no basis for the ICE officers to conduct a search in the manner they did and no basis to strike Mr. Perdomo either before or after he questioned their methods.

47.        Mr. Perdomo's injuries, caused by the ICE officers' unjustified attacks, have caused severe pain, which has worsened since the attack.  Although he requested medical attention immediately after being returned to Hudson on June 20, 2017, Mr. Perdomo was not visited by a doctor until September 2017.

48.        Since the attack, Mr. Perdomo has been plagued by frequent headaches.   In addition, Mr. Perdomo has had considerable difficulty sleeping on his side because of the pain in his neck and back, which he did not have prior to the attack.  Mr. Perdomo's knee, injured by the ICE officials, remains swollen, and he suffers continuous pain in his knee, and, at times, has been confined to bed.  Mr. Perdomo also suffered emotional distress from the attack, including anxiety, worry, and trouble sleeping.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### CLAIMS AGAINST DEFENDANT UNITED STATES OF AMERICA UNDER THE FEDERAL TORT CLAIMS ACT:
### ASSAULT AND BATTERY
### (28 U.S.C. § 2674)

49.        Mr. Perdomo repeats and re-alleges each and every allegation set forth in paragraphs 1 through 48 as if fully set forth herein.

50.     The Federal Tort Claims Act allows suits for assault and battery perpetrated by federal investigative or law enforcement officers empowered to execute searches, to seize evidence, or to make arrests for violations of Federal Law.

51.     As stated in the facts and allegations set forth above, federal government investigative or law enforcement officers committed an intentional assault and battery under color of law, by using objectively unreasonable and excessive force against Mr. Perdomo.  During a routine security check, Unknown Officer #1 grasped Mr. Perdomo so hard as to bruise him, struck him in the genitals, and punched him in the jaw.  Unknown Officer #2 threw Mr. Perdomo to the floor, struck Mr. Perdomo with his knee, and slammed Mr. Perdomo's head against a cell door. Unknown Officer #2 also unnecessarily tightened Mr. Perdomo's handcuffs after Mr. Perdomo complained the already excessively tightened handcuffs were causing him pain.

52.     These actions actually and proximately Mr. Perdomo's injuries and damages, which include, but are not limited to, pain in his neck, knees, and genitals, and various forms of emotional distress.

## SECOND CAUSE OF ACTION
### CLAIMS AGAINST DEFENDANT UNITED STATES OF AMERICA UNDER THE FEDERAL TORT CLAIMS ACT:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (28 U.S.C. § 2674)

53.     Mr. Perdomo repeats and re-alleges each and every allegation set forth in paragraphs 1 through 52 as if fully set forth herein.

54.     As stated in the facts and allegations described above, federal government investigative or law enforcement officers committed the tort of intentional infliction of emotional distress, under color of law, by using objectively unreasonable and excessive force against Mr.

Perdomo, confining him separate from other detainees without cause, and taking actions that ignored and intentionally worsened pain he was suffering.

55.     These actions actually and proximately caused Mr. Perdomo to suffer emotional distress.

**THIRD CAUSE OF ACTION**
**CLAIMS AGAINST DEFENDANT UNITED STATES OF AMERICA UNDER THE**
**FEDERAL TORT CLAIMS ACT:**
**NEGLIGENCE**
**(28 U.S.C. § 2674)**

56.     Mr. Perdomo repeats and re-alleges each and every allegation set forth in paragraphs 1 through 55 as if fully set forth herein.

57.     As stated in the facts and allegations described above, federal government investigative or law enforcement officers committed the torts of assault, battery, and intentional infliction of emotional distress, under color of law, by using objectively unreasonable and excessive force against Mr. Perdomo, confining him separate from other detainees without cause, and taking actions that ignored and intentionally worsened pain he was suffering.

58.     Additional unknown federal officers and employees with the duty to ensure the safety of federal detainees and/or that federal detainees' rights are protected witnessed the above-described attacks against Mr. Perdomo.

59.     These additional unknown federal officers and employees had the power and duty to prevent and/or stop the above-described attacks against Mr. Perdomo.

60.     These additional unknown federal officers and employees failed to act to prevent and/or stop the above-described attacks against Mr. Perdomo.

61.     These actions actually and proximately Mr. Perdomo's injuries and damages, which include, but are not limited to, pain in his neck, knees, and genitals, and various forms of emotional distress.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a.     Judgment in favor of Plaintiff against the Defendant;

b.     A judgment awarding Plaintiff all available damages for the Defendant's tortious acts against Plaintiff;

c.     A judgment awarding Plaintiff all available damages for the Defendant's violations of Plaintiff's constitutional rights, including compensatory and punitive damages;

d.     An order granting Plaintiff the costs, fees and disbursements incurred in connection with these proceedings; and

e.     Such further relief as this Court deems just and proper.

### JURY DEMAND

To the extent permitted by law, Plaintiff hereby demands a jury trial in this action.

Dated:   New York, New York
         April 16, 2019

GIBSON, DUNN & CRUTCHER LLP

By: _____
         Richard W. Mark
         200 Park Avenue
         New York, NY  10166-0193
         Telephone:  212.351.4000
         Facsimile:  212.351.4035
         *Attorneys for Plaintiff Gerardo Perdomo*